HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| EAGLE HARBOUR CONDOMINIUM ASSOCIATION,<br><br>                Plaintiff,<br><br>   v.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>                Defendant. | CASE NO. C15-5312 RBL<br><br>ORDER DENYING RECONSIDERATION<br><br>DKT. #36 |

      THIS MATTER is before the Court on Defendant Allstate Insurance Company's Motion for Reconsideration [Dkt. #36] of the Court's Order [Dkt. #31] denying its Motion for Summary Judgment [Dkt. #19]. This case involves whether Allstate covered Plaintiff Eagle Harbour Condominium Association's progressive losses.

      The Association manages two stucco-clad condominium buildings built in 1968 and 1980 on Bainbridge Island, Washington. Allstate insured it from September 1, 1988 to September 1, 1997. During this time, and for years afterwards, the condominiums' stairwells, decks, and other uninhabited areas suffered from ongoing and progressive damage due to decay. The Association repaired these structures as needed. While repairing a free-standing stair tower, it noticed extensive damage to the tower's sheathing and framing, which are behind the stucco cladding,

and so hidden from view. It tendered a claim to Allstate in July 2014, and in August, it hired Building Envelope Technology & Research (BET&R) to investigate whether the main buildings' exterior walls' sheathing and framing suffered from hidden water damage as well. The Association learned that water intrusions had caused progressive hidden damage to these areas since the buildings' construction. It tendered a claim to Allstate for this damage seven months later, in March 2015.

The Association filed suit against Allstate in April 2015 for (1) the cost of repairing hidden damage to sheathing and framing in the condominiums' exterior walls caused by water intrusion and (2) the risk of collapse caused by hidden decay. Allstate sought summary judgment, arguing the Association's policy required it to bring its claims "within one year after a loss occurs," and because it had neglected to do so, its claims were time-barred. [Dkt. #19]. Applying a case where the Washington Supreme Court interpreted a nearly identical suit limitations provision to that at issue here, *Panorama Village Condominium Owners Association Board of Directors v. Allstate Insurance Company*, 144 Wash.2d 130, 26 P.3d 910 (Wash. 2001), this Court reasoned that the limitations period did not accrue—the insured-against loss did not "occur"—until the Association knew about the system-wide failure of the buildings' envelopes. It therefore concluded that the Association had timely brought its claims, and so denied Allstate's motion. [Dkt. #31].

Allstate requests reconsideration. [Dkt. #36]. It argues that this Court erroneously expanded *Panorama* by applying its holding to progressive damage *not* involving a risk of collapse, because Allstate does not insure losses caused by a hidden source unless the damage involves a risk of collapse. It also argues that even if *Panorama* applies to the losses caused by

DKT. #36 - 2

water intrusion, the condominiums' damage was exposed to the Association by 2006 at the latest, so both of the Association's claims are untimely.

Motions for reconsideration are disfavored. The Court will ordinarily deny such motions in the absence of a showing of new legal authority or facts that could not have been brought to its attention earlier with reasonable diligence or a showing of manifest error in the prior ruling. *See* Local Rule W.D. Wash. CR 7(h)(1). The term "manifest error" is "an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." Black's Law Dictionary 622 (9th ed. 2009).

First, Allstate argues the Court misapplied *Panorama Village*, in which the Washington Supreme Court elucidated how courts should interpret insurance policies under Washington law, by applying an identical suit limitations provision to a different coverage clause than that in *Panorama*. *See generally*, 144 Wash.2d 130.

In *Panorama*, the Washington Supreme Court refused to rewrite the parties' contract to include a discovery rule: that the limitations period accrues once the policyholder knew or reasonably should have known the loss was occurring. *Id*. at 138–39. Instead, it adopted the dictionary definition of the contract's terms, and resolved any ambiguities in the policyholder's favor. *Id*. at 139–41. From there, it distinguished a suit limitations period requiring an insured to bring an action "within one year after a loss occurs"—meaning "one year subsequent to or succeeding the loss"—from a limitations period requiring an insured to bring an action within one year after a loss's *inception*, which affords an insurance company greater protection for progressive losses. *Id*. at 139. Applying this analysis to a clause providing coverage for the risk of loss involving collapse due to hidden decay, the Washington Supreme Court concluded that "the peril insured against continues to exist until at least the earlier of either (a) actual collapse or

1  (b) the end of hidden decay." *Id*. at 140 (internal punctuation omitted). The dissent described the

2  majority's holding: "the suit limitation language 'after a loss occurs' [means] after a loss is over

3  … [and] … a loss is not over while ongoing damage continues." *Id*. at 145. In general terms,

4  then, for an "after a loss occurs" clause, the loss occurs—and the limitations period starts—when

5  the loss's cause ends. *See id*.

6      The Association's policy generally insured against "loss or damage resulting from direct

7  physical loss" and included a collapse provision, similar to that in *Panorama*, which covered the

8  "risk of direct physical loss involving collapse of a covered building or any party of covered

9  building caused … by … hidden decay." *See* Dkt. 20-1 at 30–34. It also covered losses caused by

10  rain or snow entering the buildings "through openings in the roof or walls" or by water damage

11  resulting from "wear and tear[,]… deterioration, defects that could not have been discovered

12  with a reasonably thorough inspection, … mold, rot, contamination, … [and] wetness or dryness

13  of the air." *See id*. at 16, 37. The policy required the Association to bring an action "within one

14  year after a loss occurs." *See* Dkt. #20-2 at 2.

15      Following the Washington Supreme Court's instruction, the Association's first-claimed

16  loss—damage to sheathing and framing in the condominium's exterior walls caused by water

17  intrusion—lasted until the intrusion ended. *See Panorama Village*, 144 Wash.2d at 140, 145. The

18  one-year suit limitations period began at that time: no earlier than August 2014.

19      Allstate raises pragmatic concerns for why the Court should not apply *Panorama* to this

20  claimed progressive loss, which does not fall under the policy's collapse provision. It argues that

21  where a policy does not make the hidden nature of damage a prerequisite to coverage, a

22  progressive loss should be cut off no later than a year after the policy's expiration, because it is

23  no longer occurring within the policy's effective dates. Courts do not have the power to rewrite a

24

1   contract that the parties have deliberately made for themselves. *See Chaffee v. Chaffee*, 19
2   Wash.2d 607, 625, 145 P.2d 244 (1943). If Allstate and the Association had intended to sever
3   Allstate's liability for progressive losses within one year of the policy's effective dates, they
4   could have. They also could have limited Allstate's liability by agreeing to an inception clause.
5   They agreed to neither, and the Court will not rewrite their "after a loss occurs" limitations
6   language under the guise of interpretation. *See id*.

7        Moreover, this Court's application of *Panorama* to the Association's first-claimed loss
8   does not turn on the fact that the water intrusion is "hidden." Rather, it hinges on the Washington
9   Supreme Court's conclusion that a loss occurs when its cause ends. *See Panorama Village*, 144
10  Wash.2d at 140, 145. Because "[a]n insurance policy is construed as a whole, with the policy
11  being given a fair, reasonable, and sensible construction as would be given to the contract by the
12  average person purchasing insurance," this suit limitations language applies to each coverage
13  clause equally. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wash.2d 654, 665–66, 15
14  P.3d 115 (2000) (internal quotations omitted).

15       Allstate also argues that application of *Panorama* to non-collapse language rewards
16  apathetic building owners who wait to address system-wide intrusion problems. The dissent in
17  *Panorama* made the same argument, suggesting the majority's holding converts coverage for
18  progressive losses into maintenance and repair coverage. *See Panorama*, 144 Wash.2d at 145–
19  46. The Washington Supreme Court dispensed with this argument when it crafted its holding,
20  which this Court respectfully applies to Washington coverage issues.

21       Second, Allstate argues that even if *Panorama* applies to progressive damage where
22  being hidden is not a prerequisite to coverage, this Court should reevaluate its understanding of

23

24

DKT. #36 - 5

1    the undisputed facts. Allstate has not shown new facts, nor has it demonstrated that this Court

2    committed manifest error.

3        Because Allstate has not shown new legal authority or facts or that this Court committed

4    manifest error, Allstate's Motion for Reconsideration is DENIED. [Dkt. #36].

5        IT IS SO ORDERED.

6        Dated this 9th day of February, 2016.

                                                 Ronald B. Leighton
                                                 United States District Judge